IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| RICK SIMS § | |
| § | |
| VS. § | CIVIL ACTION NO. H-07-4511 |
| § | |
| TEXAS DEPARTMENT OF HOUSING § | |
| AND COMMUNITY AFFAIRS, ET AL. § | |

## OPINION AND ORDER

Before the Court, by the consent of the Parties pursuant to 28 U.S.C. § 636(c)(1), is the Motion for Summary Judgment of the sole remaining Defendant Village of Zion, LP. The Motion seeks summary judgment as to all claims asserted against Village of Zion by Plaintiff, Rick R. Sims. Having considered the Motion, Sims' response, the Parties submissions and the appropriate law, when available, the Court now issues this Opinion and Order.

Sims is a recovering drug addict who has been through rehabilitation but still claims to "have a hard time even today dealing with that addiction." Since 1992 he has been "full time in the ministry" in a non-parish capacity with the "Great Open Door Church of God in Christ." In January 2004, in furtherance of his ministry, he applied for tax credits through a program administered by the Texas Department of Housing and Community Affairs (TDH) in an effort to develop, construct and operate a low income housing facility for homeless families with disabilities in Houston, Texas. In support of his application, Sims performed substantial work. He, *inter alia*, obtained and analyzed a third-party market study, an appraisal on the real property involved, and an environmental assessment. He also engaged an architect to design the project and developed a subcontracting plan, a marketing plan and a 15-year financial study. Unfortunately, on July 8, 2004, his application was terminated by TDH.

On July 26, 2004, Sims, in an effort to revive the project, entered into a consulting contract with the Greater Zion Missionary Baptist Church (the Church) and Zion Village Ltd.  The Church owned the property upon which the Zion Village Apartments were to be built.  Zion Village Ltd. was a proposed partnership which was to be formed to run the apartment project.  Pursuant to the agreement, a new application for tax credits was filed by the Church with TDH on March 1, 2006.  Sims used the work he had previously performed and did additional work in support of the application, however, the application was found deficient by TDH.  Sims then informed TDH that "he was having difficulty due to my handicap" with curing the deficiency and "requested reasonable accommodation…to make the minor modification," he requested an extension of a June 8, 2006 compliance deadline for the filing of an appraisal.  TDH refused to "accommodate" Sims and the deficient application was, therefore, terminated on June 21, 2006.  Apparently, since the application was unsuccessful, Zion Village Ltd., was never formed.

On January 2, 2007, the Church sold the real property to TK Net, LLC.  On October 31, 2007, TK Net sold the property to Village of Zion LP, the Defendant herein.  In an effort to bring the housing project to fruition, Village of Zion retained and paid consultants to perform the work needed to successfully prosecute an application for tax credits from TDH.  Village of Zion's application was ultimately approved.

On December 21, 2007, Sims sued, *inter alios*, Village of Zion.  According to Sims, Village of Zion's consultants, without his permission, simply made minor (9%) modifications and alterations to the work he had performed in order to procure the tax credits needed to build the housing project.  Through this suit, Sims seeks to be paid for his work and the expenses he incurred.

2

Sims originally sued TDH for violating the Americans with Disabilities Act (ADA) by refusing to "accommodate" his disability by extending the deadline for the filing of the appraisal. The ADA claim against TDH was dismissed on the basis of TDH's sovereign immunity. Despite that dismissal, Sims persists in asserting an ADA claim against Village of Zion because it "knowingly perpetuated the discrimination which is unlawful in connection with the Development of the Project" through "interference" with his attempt to be granted the tax credits. Title II of the ADA mandates that, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132   Arguably, "programs, services and activities" could encompass all of the activities of a public entity and could, therefore, include applying for tax credits from TDH. Cf. Johnson v. City of Saline, 151 F.3d 564, 570 (6th Cir. 1998)   Even assuming this to be so, Sims' ADA claim against Village of Zion fails. First, Village of Zion simply played no part in TDH's decision to deny Sims any requested accommodation. Second, contrary to Sims' position, the ADA requires reasonable accommodation of limitations, not disabilities, Taylor v. Principle Financial Group, Inc., 93 F.3d 155, 164 (5th Cir. 1996), and Sims has identified absolutely no limitations caused by his addiction which made it impossible for him to meet a deadline established by TDH. Moreover, his ability to timely perform his consulting work as well as his work in this case belies any claim of such a limitation. Finally, the accommodation Sims sought was unreasonable. A disabled individual is not entitled to whatever modification he thinks might accommodate his limitations. Nor is he entitled to obtain an advantage over his non-disabled peers. The ADA only requires accommodations necessary to give him the same opportunity to obtain the offered benefit

that he would have had were it not for the limitations caused by his disability.  See Long v. Howard University, 439 F.Supp. 2d 68, 75 (D. D. C. 2006)    TDH was well within the law to deny an extension giving Sims an advantage over other applicants for tax credits.  Since Sims cannot show any ADA violation, even if he were able to attribute TDH's actions to Village of Zion, which this Court seriously doubts, his claim is without merit.

Sims has also sued Village of Zion for conversion of his work on the two failed applications.  His conversion theory is without merit.  Sims performed his work as a consultant for the Church pursuant to the written contract.  The work was performed in support of the Church's application.  Therefore, the tangible results of the work became the property of the Church when used in the application process.  In effect, Sims surrendered any "title" he may have had to the Church, See Gardner v. Jones, 570 S.W.2d 198, 200 (Tex. Civ. App. - - Houston [1st Dist] 1978) (when possession of property is unconditionally delivered to defendant purchaser, notwithstanding the fact that a portion of the purchase price is still owed, plaintiff is a mere creditor, without a lien.), and any conversion of the work from Sims became impossible.  Sims' obvious remedy is to seek his contractual compensation from the Church, not Village of Zion, but in his opinion suing the Church would violate biblical law, 1 Corinthians 5[1], and he has, therefore, chosen not to do so.

Insofar as Sims may be claiming the conversion by Village of Zion of some intangible intellectual property right, like the unique skill and knowledge to perform the work, Texas law does not recognize the "conversion" of such property.  W.G. Pettigrew Distributing Co. v. Borden, Inc., 976 F.Supp. 1043, 1057 (S.D. Tex. 1996)

---

[1] Paul's condemnation of lawsuits between Church members actually appears in 1 Corinthians 6.

4

Sims makes a second, interesting argument in an attempt to collect from Village of Zion. His contract with the Church provided that the "agreement shall be binding upon, and shall inure to the benefit of the parties hereto, there respective heirs, successors and assigns as the case may be." According to Sims, his work somehow attached to the land upon which the project was to be built and was, therefore, assigned to, or became the obligation of, any subsequent purchasers of that land, in this case, TK Net[2] and Village of Zion. Sims, of course, offers no supporting statutory or case law for this position, and the Court has been unable to find any on its own. Therefore, this lien-type claim fails for the same reason his conversion claim does: Sims is nothing more than a creditor of the Church, he has no legally enforceable lien on the property. Gardner, 570 S.W.2d at 200    In the absence of an enforceable lien against the real property, Sims' unsupported argument that the purchase of the land by Village of Zion, following the termination of the Church's application, induced a breach of his contract with the Church and obligated Village of Zion to pay the Church's debt to him also fails.

For the foregoing reasons, it is the **ORDER** of this Court that the Motion for Summary Judgment (Instrument no. 55) of Defendant Village of Zion, LP, is **GRANTED** and that all claims asserted against it by Plaintiff, Rick R. Sims, are **DISMISSED**.

**DONE** at Brownsville, Texas, this ___21st___ day of October, 2009.

_____
John R. Froeschner
United States Magistrate Judge

---

[2] Sims sued TK Net, but TK Net was never served with process; consequently Sims' complaint against TK Net was dismissed pursuant to Rule 4(m).